## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## WESTERN DIVISION

| | |
|---|---|
| In re: Joseph J. Baker<br>and Jennifer L. Baker,<br>        Debtor(s). | Bankruptcy No. 08 B 72480<br>Chapter 13<br>Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on the motion to dismiss filed by Chapter 13 trustee Lydia S. Meyer ("Trustee"), pursuant to 11 U.S.C. § 1325(b)(1)(B), on October 9, 2008. For the reasons set forth herein, the Court denies the Trustee's motion to dismiss.

### JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2)(L).

### FACTS AND BACKGROUND

Debtors Joseph L. Baker and Jennifer L. Baker ("Debtors") filed a Chapter 13 voluntary bankruptcy petition, including Schedule I, a Chapter 13 Plan, and a Statement of Current Monthly and Disposable Income ("CMI"), on August 1, 2008. Debtors' CMI indicated annualized current monthly income of $65,532[1] with a household size of four.[2] The Illinois median family income for four was $77,634 on the petition date, while the Illinois median family

---

[1] Debtors' CMI indicates Debtor Joseph J. Baker's current monthly income is $4,677, while his spouse Co-Debtor Jennifer L. Baker's current monthly income is $784. $4,677 plus $784 equals $5,461 per month. Pursuant to 11 U.S.C. 1325(b)(4), $5,461 per month multiplied by 12 months equals $65,532. In contrast, according to Debtors' Schedule I, Debtor Joseph J. Baker's current monthly income is $5,230, while his spouse Co-Debtor Jennifer L. Baker's does not have any current monthly income.

[2] According to Debtors' Schedule I, Debtors' have five dependents, including Debtor Joseph Baker's former wife who lives with Debtors, Debtors' minor child, and Debtors' 24-year-old adult daughter from a previous marriage that lives with them. In addition, according to Schedule I, Debtor Jennifer Baker is expecting a second child in August 2008.

1 of 7

income for three equaled $66,607 on the petition date.[3] Thus, Debtor filed as a below-median debtor. In the Chapter 13 Plan filed August 1, 2008, Debtors proposed to make plan payments of $204 monthly to the Trustee for 40 months and direct monthly payments to Sunset Mortgage Company for $1,209.

On October 9, 2008, the Trustee filed a motion to dismiss for failure to meet confirmation requirements under 11 U.S.C. § 1325(b)(1)(B) because Debtors should be declared above median debtors. Despite Debtors' claim of four members in their household, the Trustee disputes this allegation and states that Debtors did not claim a 24-year-old daughter from a previous marriage who lives with both Debtors on their 2007 federal income tax returns and, thus, may only claim three (3) members in their household for purposes of above or below median income determinations. Consequently, with only three members in their household, Trustee states that Debtors' income indicates that Debtors are above median income debtors and require a five-year commitment period.

On October 16, 2008, Debtors filed a response to the Trustee's motion to dismiss. Debtors assert that the Debtors' household size is determined as of the hearing on the Trustee's objection to the confirmation of the plan, citing In re Fleishman, 372 B.R. 64 (Bankr. D. Or. 2007). Thus, Debtors argue that they have a four person household and a three-year commitment period. In addition, Debtors assert that they will need to amend their CMI form because Debtor Jennifer Baker gave birth to the Debtors' second child on October 15, 2008.

On January 6, 2009, the Trustee filed a reply to Debtors' response to Trustee's motion to dismiss. The Trustee asserts that the determination on whether a debtor is above- or below-median is made at the time of filing based on the CMI, including the number in the household,

---

3 See Census Bureau Median Family Income by Family Size, reported at http://www.usdoj.gov/ust/eo/bapcpa/20080317/bci_data/median_income_table.htm (last visited January 23, 2009).

citing In re Greer, 388 B.R. 889 (Bankr. C.D. Ill. 2008). Moreover, the Trustee states that Congress intended the court to utilize CMI as a bright-line test to establish the family size for above- or below-mean income determinations, citing In re Ross-Toussey, No. 07-2503, slip op. at 23 (7th Cir. Dec. 17, 2008).

## DISCUSSION

At issue is what date is the "applicable commitment period" for a debtor's Chapter 13 plan determined and the extent that a debtor's pre-petition income tax returns reflect the appropriate household size or whether any post-petition and pre-confirmation changes of household size affects the calculation of the "applicable commitment period." As an initial matter, the debtor may amend its schedules to show an increase or decrease in household size, pursuant to Fed. R. Bankr. P. 1009(a), which provides a right to amend a "petition, list, schedule, or statement" as a matter of course at any time before the case is closed, provided the debtor notifies the trustee and any affected parties. In re Shethi, 389 B.R. 588, 598 (Bankr. N.D. Ill. 2008) (citing In re Yonikus, 996 F.2d 866, 872 (7th Cir. 1993)); see also In re Anderson, 367 B.R. 727, 730-31 (Bankr. D. Kan. 2007) (stating that debtor may amend schedules to properly reflect household size until the date the plan is confirmed).[4]

11 U.S.C. § 1325(b)(4) establishes the "applicable commitment period." In re Royal, 397 B.R. 88, 92 (Bankr. N.D. Ill. 2008) (quoting 11 U.S.C. § 1325(b)(4)). If the trustee or an unsecured creditor objects, the debtor is committed to either a three- or five-year period, depending on whether the debtor is above or below median income as determined under CMI. Ibid. (citing 11 U.S.C. § 1325(b)(1), (4)). Pursuant to § 1325(b)(1), the "applicable commitment period" is determined "as of the effective date of the plan." In re Fleishman, 372

---

4 Under BAPCPA, some courts have held that current monthly income cannot be amended during the case because it is based on concrete, historical data. In re Anderson, supra, 367 B.R. at 730-31 (citing 11 U.S.C. § 101(10A)). No such restriction, however, exists in the Code regarding household size. Id. at 731.

B.R. 64 (Bankr.D. Or. 2007). The legislative history of § 1325(b)(4) does not provide further clarification of the term "effective date of the plan." Ibid. (citing H.R. Rep. No. 31, 109th Cong., 1st Session 318 (2005)). When the legislative history does not reveal the appropriate meaning, it is helpful to resort to dictionaries and apply the common meaning of the term. Carmichael v. Payment Ctr., Inc., 336 F.3d 636, 640 (7th Cir. 2003) ("Without a statutory definition, we construe [a] term [of a statute] 'in accordance with its ordinary or natural meaning,' a meaning which may be supplied by a dictionary.") (quoting FDIC v. Meyer, 510 U.S. 471, 476 (1994)).

> "Effective" in common parlance means "ready for service or action; to effect." "Effect in turn means "a quality or state of being operative." Webster's New Collegiate Dictionary (1975). Both logically and by definition, the effective date of a plan cannot exist before the date the plan is filed. In other words, a plan cannot be "ready for action" or "operative" before it exists.
>
> [In re Fleishman, supra, 372 B.R. at 64 (quoting In re Musil, 99 B.R. 448, 450 (Bankr. D. Kan. 1988)).]

In the absence of a definition provided by Congress, courts have held that the term "effective date of the plan," as used in § 1325(b)(1), means the date that the plan is confirmed. Ibid.; In re Anderson, supra, 367 B.R. at 730-31. Moreover, a chapter 13 plan is generally filed early in a chapter 13 case, but it does not bind the debtor or other interested parties until it is confirmed. See In re Fleishman, supra, 372 B.R. at 64 (citing 11 U.S.C. § 1327(a)).

Pursuant to the Federal Rules of Bankruptcy Procedure, all chapter 13 debtors are required to calculate "applicable commitment period" for their cases and file a document including such calculation on or about the time of filing. Ibid. (citing Fed. R. Bankr. P. 1007(c)). Pursuant to Interim Rule 1007(b)(6), this document, under Official Form B22C, will determine disposable income through a calculation of current monthly income compared to the median family income for the applicable state and family size. See In re Farrar-Johnson, 353 B.R. 224, 228 n.6 (Bankr. N.D. Ill. 2006) (citing Interim Fed. R.

Bankr. P. 1007(b)(6). Median family income is defined under 11 U.S.C. § 101(39A) and reported by the Bureau of the Census in the most recent year. In re Demonica, 345 B.R. 895, 897 n.2 (Bankr. N.D. Ill. 2006).

The United States Census Bureau defines "household"[5] as follows:

> A household consists of all the people who occupy a housing unit. A house, an apartment or other group of rooms, or a single room, is regarded as a housing unit when it is occupied or intended for occupancy as separate living quarters; that is, when the occupants do not live and eat with any other persons in the structure and there is direct access from the outside or through a common hall. A household includes the related family members and all the unrelated people, if any, such as lodgers, foster children, wards, or employees who share the housing unit. A person living alone in a housing unit, or a group of unrelated people sharing a housing unit such as partners or roomers, is also counted as a household. The count of households excludes group quarters. There are two major categories of households, "family" and "nonfamily".

In addition, the United States Census Bureau defines "Household, family, or subfamily, Size of"[6] as follows:

> The term "size of household" includes all the people occupying a housing unit. "Size of family" includes the family householder and all other people in the living quarters who are related to the householder by birth, marriage, or adoption. "Size of related subfamily" includes the husband and wife or the lone parent and their never-married sons and daughters under 18 years of age. "Size of unrelated subfamily" includes the reference person and all other members related to the reference person. If a family has a related subfamily among its members, the size of the family includes the members of the related subfamily.

Here, the Debtor's plan is evaluated for compliance with § 1325 as of confirmation. At present, Debtor's applicable commitment period is statutorily set at three years. Under their CMI, Debtors listed their household size as four and, based on their current monthly income compared to the median family income for Illinois and

---

5 See Census Bureau Current Population Survey (CPS) – Definitions & Explanations, reported at http://www.census.gov/population/www/cps/cpsdef.html (last visited January 23, 2009).
6 See Census Bureau Current Population Survey (CPS) – Definitions & Explanations, reported at http://www.census.gov/population/www/cps/cpsdef.html (last visited January 23, 2009).

family size, they are below median debtors. If there is a change in circumstances, debtors are required to amend to present a true picture of their circumstances. This is particularly true if there remains a discrepancy in their future tax returns compared to their pre-confirmation household size disclosures.

Therefore, the Court overrules the Trustee's Objection to Confirmation.

**CONCLUSION**

For the foregoing reasons, the Court denies the Trustee's motion to dismiss.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: January 30, 2009

Manuel Barbosa
United States Bankruptcy Judge